**Per A. Ramfjord, OSB No. 934024**
per.ramfjord@stoel.com
**Kennon Scott, OSB No. 144280**
kennon.scott@stoel.com
STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, OR  97205
Telephone:  (503) 224-3380
Facsimile:  (503) 220-2480

> Attorneys for Plaintiff Nike, Inc.

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| NIKE USA, INC., an Oregon corporation,<br><br>> Plaintiff,<br><br>> v.<br><br>BORIS BERIAN, an individual California resident,<br><br>> Defendant. | Case No. 3:16-cv-00743-SB<br><br>**PLAINTIFF NIKE USA, INC.'S MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE; MEMORANDUM IN SUPPORT**<br><br>REQUEST FOR ORAL ARGUMENT<br><br>EXPEDITED HEARING REQUESTED |

## LR 7-1(A) CONFERRAL CERTIFICATION

Plaintiff Nike USA, Inc. ("Nike") conferred by telephone with Vincent Ewing, counsel to Defendant Boris Berian ("Defendant" or "Berian"), but the parties were unable to resolve the matters addressed in this motion.

## MOTION FOR TEMPORARY RESTRAINING ORDER

Pursuant to Federal Rule of Civil Procedure 65, Nike moves for a temporary restraining order ("TRO") and order to show cause why a preliminary injunction should not issue to prevent Defendant from breaching his existing contractual relationship with Nike by entering into an endorsement relationship with a Nike competitor, including New Balance Athletics, Inc. ("New Balance"), and from endorsing any product of any of Nike's competitors until the Court rules on Nike's request for a preliminary injunction.  This motion is based on the Memorandum in Support below, the Declarations of Ben Cesar ("Cesar Decl.") and Per A. Ramfjord ("Ramfjord Decl.") filed herewith, the Complaint, and such other evidence and argument as the parties may present to the Court.  Nike also has submitted a proposed TRO and order to show cause to the Court.

## MEMORANDUM IN SUPPORT

## I.  INTRODUCTION

This action arises out of a track and field endorsement contract between Nike and Defendant, a highly successful runner who is a favorite to qualify for the 2016 Olympic Games. Although Defendant is currently under an exclusive endorsement contract with Nike, he has chosen to compete in the footwear and apparel of one of Nike's competitors.  Because Nike will suffer irreparable harm if Defendant is allowed to continue such conduct in high-profile events like the Olympic Trials and Olympic Games, Nike seeks injunctive relief precluding Defendant

Page 1  -   PLAINTIFF NIKE USA, INC.'S MOTION FOR TEMPORARY RESTRAINING
              ORDER AND ORDER TO SHOW CAUSE WHY PRELIMINARY
              INJUNCTION SHOULD NOT ISSUE; MEMORANDUM IN SUPPORT

from continuing to violate his contractual obligations pending resolution of this matter.  Nike is

entitled to such relief for at least three reasons.

First, injunctive relief is appropriate to enforce endorsement agreements of this kind.  *See*

*Nike USA, Inc. v. Culpepper*, No. 02-868-JE, 2002 U.S. Dist. LEXIS 28777, at *14 (D. Or. July

24, 2002) (enjoining professional athlete endorser "from any conduct that enters into or furthers

an endorsement relationship with Reebok or any other Nike competitor pending a final

resolution" of claim to enforce existing endorsement contract).

Second, Defendant has breached and continues to breach his contractual obligations to

Nike in a manner that justifies injunctive relief.  Specifically, Defendant has competed in a

number of high-profile athletics events in 2016, including the IAAF World Indoor

Championships (where he won the gold medal), while wearing the footwear of New Balance

despite Defendant being under contract with Nike during this period.  Defendant has refused to

acknowledge that Nike renewed its contractual agreement with him when it agreed to match an

offer that Defendant presented Nike in January 2016 from New Balance (the "New Balance

Offer") pursuant to the "right of first refusal" provision in Defendant's original endorsement

contract.  Despite repeated communications from Nike, Defendant has simply ignored his

contractual obligations as he continues to compete in New Balance footwear and apparel.

Third, Defendant's actions are causing and will continue to cause Nike irreparable harm.

Defendant is slated to compete in the U.S. Olympic Team Trials in July and is a favorite to

qualify for and compete at the 2016 Olympics in Rio de Janeiro, Brazil in August. The Olympics

and Olympic Trials are held once every four years.  Defendant's participation and potential for

success in these events make his endorsement a unique marketing and promotional opportunity.

There is no question that Nike would be irreparably harmed if Defendant were allowed to

Page 2    -    PLAINTIFF NIKE USA, INC.'S MOTION FOR TEMPORARY RESTRAINING
                ORDER AND ORDER TO SHOW CAUSE WHY PRELIMINARY
                INJUNCTION SHOULD NOT ISSUE; MEMORANDUM IN SUPPORT

compete in such high-level events wearing the footwear and apparel of one of Nike's competitors, as the value to Nike of Defendant competing in a rare event like the Olympics is both unquantifiable and irreplaceable.

For these and other reasons described below and in supporting evidence, this Court should award Nike its requested injunctive relief.

## II.  FACTS

### A.    The Track & Field Contract Between Nike and Boris Berian.

Nike is the world's leading innovator in athletic footwear, apparel, and equipment.  Cesar Decl. ¶ 2.  Nike's success has been built in part by forming endorsement relationships with high-profile athletes, including Defendant, who is a highly successful runner.  *Id.* ¶¶ 2, 5.  Defendant has recently proven his success, finishing fourth in the Monaco Diamond League 800 meter event with the fifth-fastest American mark of all-time.  *Id.* ¶ 5.  He also recently won first place in the 800 meter event at the IAAF World Indoor Championships held in Portland, Oregon in March and the Prefontaine Classic in Eugene, Oregon in May.  *Id.*  And, as noted earlier, he is slated to compete in the Olympic Trials and is a favorite to qualify for the U.S. Olympic Team. *Id.* ¶ 14.

Nike initially agreed to endorse Defendant pursuant to a 2015 Track & Field Contract, dated June 17, 2015 (the "2015 Contract").  *Id.* ¶ 5; *id.* Ex. 1.  The 2015 Contract had a nearly seven-month term, ending on December 31, 2015, and it gave Nike the exclusive right to Defendant's endorsement of athletic footwear and apparel throughout the term.  *Id.* ¶ 5; *id.* Ex. 1. The 2015 Contract also included a right of first refusal under which Nike had the right to enter a new agreement with Defendant on terms no less favorable than those offered by any competitor. *Id.* ¶ 6. Specifically, Section 5 of the 2015 Contract provides that:

Page 3  -   PLAINTIFF NIKE USA, INC.'S MOTION FOR TEMPORARY RESTRAINING
             ORDER AND ORDER TO SHOW CAUSE WHY PRELIMINARY
             INJUNCTION SHOULD NOT ISSUE; MEMORANDUM IN SUPPORT

86692144.4 0063718-00220

> During the Contract Period and for a 180-day period thereafter, NIKE shall have a right of first refusal with regard to any bona fide third-party offer received by ATHLETE and which ATHLETE desires to accept. ATHLETE shall submit in writing to NIKE (on the third-party's letterhead) the specific terms of any such offer. NIKE shall have ten (10) business days from the date of its receipt of such third-party offer to notify ATHLETE in writing if it will enter into a new contract with ATHLETE on terms no less favorable to ATHLETE than the material, measurable and matchable terms of such third-party offer.

*Id.*; *id.* Ex. 1 at 1.

**B.     Nike Exercises Its Right of First Refusal, Forming a New Contract, but Defendant Refuses to Recognize the Contract.**

Following expiration of the 2015 Contract, Defendant engaged in negotiations with New Balance regarding a potential endorsement contract. *See id.* ¶ 7.  On January 19, 2016, Defendant's agent, Merhawi Keflezighi ("Keflezighi"), emailed Nike pursuant to Section 5 of Defendant's 2015 Contract with Nike, stating that Defendant had received an offer from New Balance that he found to be "agreeable." *Id.*; *id.* Ex. 2.  That same day, Nike responded asking Keflezighi to resend the offer on official New Balance letterhead, as required by Section 5 of the 2015 Contract. *Id.* ¶ 7; *id.* Ex. 3.  Keflezighi did so the next day. *Id.* ¶ 7; *id.* Ex. 3.  The offer, which was in the form of a term sheet, provided specifics related to the following seven categories: (i) a base fee, (ii) travel allowance, (iii) merchandise allotment, (iv) performance bonuses, (v) track time bonuses, (vi) rollover increases to the base fee, and (vii) allowing Defendant to compete under the affiliation of his track club. *Id.* Ex. 3 at pp. 3-5.

Three days later, on January 22, 2016, Nike sent a letter to Keflezighi unequivocally stating that "NIKE matches the New Balance Offer," thereby exercising its right of first refusal and creating a binding contract between Defendant and Nike (the "2016 Contract"). *Id.* ¶ 8; *id.* Ex. 4.  Nike's letter specifically matched the seven terms in the attachment Keflezighi previously provided. *Id.* Ex. 4 at pp. 5-7.  Notably, the New Balance term sheet was not a full written

Page 4   -   PLAINTIFF NIKE USA, INC.'S MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE; MEMORANDUM IN SUPPORT

agreement and was silent on a variety of terms that are standard in track and field endorsement

contracts, including reductions.[1]  *Id.* ¶ 8.

On February 15, 2016, Nike followed up by sending Keflezighi a written agreement to

memorialize the terms of the 2016 Contract.  *Id.* ¶ 9.  It included the material, measurable, and

matchable terms from the New Balance Offer and other standard contractual terms.  *Id.*  After

receiving the written agreement, Keflezighi emailed Nike stating that Defendant "has expressed

an interest not to resume a relationship with Nike."  *Id.*; *id.* ¶ Ex. 5.  He also reserved his "right"

to submit a "revised proposal/offer" should Nike "decide not to honor [Defendant's] personal

preference."  *Id.* Ex. 5.

Thereafter, on February 19, 2016, Nike sent a letter to Defendant, insisting that, as of

January 22, 2016, Defendant was bound by the 2016 Contract and thus not free to go back to

New Balance to try to get a different or better offer to present to Nike.  *Id.* Ex. 6.  In addition,

Nike has twice attempted to wire Defendant payment for all amounts due to Defendant under the

2016 Contract.  *Id.* ¶ 11.  Nike has also otherwise performed all of its obligations under the 2016

Contract, including, among other things, providing Defendant with access to an online store for

ordering Nike product as permitted for product allowance under the 2016 Contract.  *See id.*

**C.**      **Defendant Breaches His Contractual Obligations by Competing in New Balance Footwear and Apparel.**

Despite the fact that Nike clearly matched the New Balance Offer, Defendant has

---

[1] Standard "reductions" provide for a reduction of an athlete's compensation if the athlete fails to perform his or her obligations under the contract or perform consistent with expectations. Cesar Decl. ¶ 8.  In his January 19, 2016 email transmitting the New Balance Offer, Keflezighi suggested that the "lack of reductions" was a "material element of the offer."  *Id.* Ex. 2 at p. 1. Therefore, Nike asked Keflezighi to confirm whether reductions or any other material terms were purposefully excluded from the written terms he provided to Nike.  *Id.* Ex. 4 at p. 1.  However, to date, Defendant has never provided Nike with any evidence suggesting that the full contractual terms proposed by New Balance did not include industry-standard reductions.  *Id.* ¶ 8.

Page 5   -   PLAINTIFF NIKE USA, INC.'S MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE; MEMORANDUM IN SUPPORT

nonetheless chosen to wear New Balance footwear and/or apparel while competing at the following events: (1) January 29, 2016 House of Track event in Portland, Oregon, (2) February 14, 2016 New Balance Indoor Games in Boston, Massachusetts, (3) March 11 and 12, 2016 USATF Indoor Track & Field Championships in Portland, Oregon, (4) April 30, 2016 Drake Relays in Des Moines, Iowa, and (5) May 28, 2016 Prefontaine Classic in Eugene, Oregon. *Id.* ¶ 12; *id.* Ex. 7.  In addition, Defendant has been promoting New Balance via his social media accounts.  *Id.* ¶ 13.  For example, several of his Tweets and Instagram posts from March, April, and May feature New Balance apparel and/or footwear and the hashtags "nbrunning," "NBRunning," and/or "TeamNB."  *Id.*; *id.* Ex. 8.  Although Defendant claims he is without an apparel and footwear sponsor, these actions clearly suggest that he has been promised compensation and/or is being compensated by New Balance either directly or through his track club, Big Bear Track Club, which New Balance recently began sponsoring.  *See id.* ¶ 13.

Defendant's actions constitute a clear violation of his contractual endorsement obligations to Nike.  Moreover, they are of particular concern because two of the most important 2016 events in the track and field world are approaching in the coming months.  *Id.* ¶ 14.  In July, Defendant is set to compete at the U.S. Olympic Team Trials in Eugene, Oregon.  *Id.*  And if successful there, Defendant will presumably compete at the 2016 Olympics in Rio de Janeiro, Brazil in August.  *Id.*  The Olympics and Olympic Trials are held only once every four years.  *Id.*  Defendant's participation and potential for success in such events make his endorsement a unique marketing and promotional opportunity.  *Id.*

**D.    Nike's Efforts to Resolve Its Dispute with Defendant.**

Despite Defendant's violation of his contractual obligations, Nike has worked to resolve this dispute with Defendant since it arose in early 2016.  *Id.* ¶ 15.  Nike's efforts have not only

Page 6   -   PLAINTIFF NIKE USA, INC.'S MOTION FOR TEMPORARY RESTRAINING
            ORDER AND ORDER TO SHOW CAUSE WHY PRELIMINARY
            INJUNCTION SHOULD NOT ISSUE; MEMORANDUM IN SUPPORT

included the email exchanges previously mentioned, but multiple letters from Nike's counsel to

Defendant and his agent in March and April of 2016, as well as communications with

Defendant's counsel, Mr. Ewing, in April and May of 2016.  Ramfjord Decl. ¶ 2.  Such efforts,

however, have been rebuffed and have resulted in nothing more than delay.  *Id.* ¶¶ 3-6.  As a

result, Nike brought this action for injunctive relief.[2]

Despite these considerations, Nike is enthusiastic about continuing to work with

Defendant in the future, and remains hopeful this matter can be concluded quickly and

efficiently, and without substantial disruption to Defendant's training.  Cesar Decl. ¶ 16.

### III.  ARGUMENT

**A.    Legal Standard.**

In the Ninth Circuit, a moving party is entitled to a TRO or preliminary injunction if it

demonstrates (1) "that [it] is likely to succeed on the merits," (2) "that [it] is likely to suffer

irreparable harm in the absence of [temporary] relief," (3) "that the balance of equities tips in

[its] favor," and (4) "that an injunction is in the public interest."[3]  *Arc of Cal. v. Douglas*, 757

F.3d 975, 983 (9th Cir. 2014) (internal quotation marks omitted) (quoting *Winter v. Nat. Res.*

---

[2] The timing of the present motion was also affected by the ongoing negotiations. Ramfjord Decl. ¶ 3.  On May 6, 2016, Mr. Ewing, counsel for Defendant, initially agreed to accept service of the Complaint, which was filed on April 29, 2016.  *Id.*  Nike served the Summons and Complaint on Mr. Ewing on May 9, 2016.  *Id.* ¶ 4.  However, Mr. Ewing failed to sign and return a confirmation of service.  *Id.*  Over the next 10 days, Nike attempted to reach Mr. Ewing on several occasions.  *Id.* ¶ 5.  Mr. Ewing did not respond until May 19, 2016.  *Id.* ¶ 6.  That day, in an email, Mr. Ewing claimed that he had "discuss[ed] and clarif[ied]" his authority to accept service with Defendant and Keflezighi.  *Id.*  And, repudiating his early agreement to accept service, Mr. Ewing now claimed that "[t]hey have not authorized this firm to accept service of the complaint," but would "notify [Nike], should this change."  *Id.*  As a result, Nike was forced to serve Defendant personally.  *Id.*  These facts explain the gap between the initial filing date for the Complaint and the date of this motion.  *Id.*

[3] The standards governing TROs and preliminary injunctions in federal court are identical.  *See Harris v. Oak Grove Cinemas, Inc.*, No. 3:13-CV-00728-HU, 2013 WL 3456563, at *1 (D. Or. May 2, 2013) (collecting cases).

Page 7   -   PLAINTIFF NIKE USA, INC.'S MOTION FOR TEMPORARY RESTRAINING
                  ORDER AND ORDER TO SHOW CAUSE WHY PRELIMINARY
                  INJUNCTION SHOULD NOT ISSUE; MEMORANDUM IN SUPPORT

*Def. Council*, 555 U.S. 7, 20 (2008); *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131

(9th Cir. 2011)).  The Ninth Circuit "evaluate[s] these factors via a 'sliding scale approach.'"  *Id*.

(quoting *Cottrell*, 632 F.3d at 1131).  Under the "sliding scale" test, "'the elements of the

preliminary injunction test are balanced, so that a stronger showing of one element may offset a

weaker showing of another.'"  *Pimentel v. Dreyfus*, 670 F.3d 1096, 1105 (9th Cir. 2012) (quoting

*Cottrell*, 632 F.3d at 1131).

**B.      Nike Is Entitled to a TRO Enjoining Defendant from Entering into a Contract with or Otherwise Endorsing a Competitor.**

**1.      Injunctive Relief Is an Appropriate Remedy to Preserve the Status Quo.**

Nike is seeking injunctive relief for the limited purpose of preserving the status quo by

prohibiting Defendant from endorsing Nike's competitor's products, pending resolution of

Nike's claims that it validly exercised its right of first refusal under the 2015 Contract, creating a

binding endorsement agreement with Defendant on the terms set forth in the New Balance Offer.

There is no question that injunctive relief is appropriate for this purpose.  Indeed, this

Court has previously granted injunctive relief under nearly identical circumstances.  *See*

*Culpepper*, 2002 U.S. Dist. LEXIS 28777, at \*14 (enjoining professional athlete endorser

"and/or anyone acting in concert with [him] . . . from any conduct that enters into or furthers an

endorsement relationship with Reebok or any other Nike competitor pending a final resolution of

the merits").   Other courts have also repeatedly granted injunctions to protect against the loss of

the services of professional athletes.  *See Wash. Capitols Basketball Club, Inc. v. Barry*, 304 F.

Supp. 1193, 1197 (N.D. Cal. 1969) ("[P]recedents for granting injunctive relief against 'star'

athletes 'jumping' their contracts … are numerous."); *Lemat Corp. v. Barry*, 275 Cal. App. 2d

671, 675 (1969) (affirming injunction preventing professional athlete from playing with

competitor); *see also Hillerich & Bradsby Co. v. Christian Bros., Inc.*, 943 F. Supp. 1136, 1141

Page 8    -    PLAINTIFF NIKE USA, INC.'S MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE; MEMORANDUM IN SUPPORT

86692144.4 0063718-00220

(D. Minn. 1996) (enjoining competitor's use of professional hockey player's name and likeness);

*MCA Records, Inc. v. Newton-John*, 90 Cal. App. 3d 18, 24 (1979) (affirming injunction

restraining pop star from recording for MCA's competitors).

       **2.**      **Nike Is Likely to Prevail on the Merits of Its Claims.**

           **a.**      **Nike Properly Exercised Its Right of First Refusal, Creating a New Contract with Defendant on the Terms Set Forth in the New Balance Offer.**

When Defendant transmitted the New Balance Offer to Nike on January 20, 2016, he

triggered Nike's right of first refusal under Section 5 of the 2015 Contract.  Defendant's

presentation of this offer to Nike, which his agent said was "agreeable," Cesar Decl. Ex. 3, gave

Nike an option to enter into an agreement with Defendant on the same terms.  *See, e.g.*, *Bidache,*

*Inc. v. Martin*, 899 P.2d 872, 874-75 (Wyo. 1995) ("A right of first refusal . . . 'gives a privilege

to purchase on a condition precedent which is the formulated desire of the owner to sell . . . .

Once the condition precedent—the owner's intent to sell—is met, the right of first refusal ripens

into an option . . . ."); *Mucci v. Brockton Bocce Club, Inc.*, 472 N.E.2d 966, 969 (Mass. App. Ct.

1985) (once the right of first refusal grantor notified the holder of a bona fide third-party offer,

"the right of first refusal ripened into an option to purchase at the stated price"); *Imperial*

*Refineries Corp. v. Morrissey*, 119 N.W.2d 872, 876 (Iowa 1963) ("The notice of the [third-

party] offer to plaintiff by defendant's counsel in a letter labeling it a bona fide offer to purchase

is an offer to sell for that figure which plaintiff accepted . . . .  [W]hen the lessor sends out notice

[of a third-party offer] pursuant to [a ROFR] provision, the two, the provision and the notice,

become an option."); *cf. Long v. Wayble*, 48 Or. App. 851, 856, 618 P.2d 22 (1980) (where

grantor promised a right of first refusal at a specified price, "[o]nce [grantors] manifested a

willingness to sell and did not retract that intent prior to [holder's] acceptance of the option

created in him, they became bound to sell the property at the specified price and could not later

   Page 9   -   PLAINTIFF NIKE USA, INC.'S MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE; MEMORANDUM IN SUPPORT

circumvent that obligation by withdrawing the property from the market").

Nike then exercised that option by matching the New Balance Offer on January 22, 2016, within the 10-day window provided by the 2015 Contract. *See* Cesar Decl. Ex. 4. This situation is no different from Nike having accepted the terms of an offer made directly by Defendant; it created a binding obligation on Defendant in precisely the same way. As this Court stated in *Culpepper*, "because Nike agreed" to the terms offered by a Nike competitor, Defendant has "bound himself to honor Nike's acceptance." *Culpepper*, 2002 U.S. Dist. LEXIS 28777, at *12.

Nike expects that Defendant will respond by arguing that Nike did not actually match the New Balance Offer because, after matching the terms of the New Balance Offer, Nike proposed a long-form agreement that included reductions, which were not mentioned in the New Balance term sheet. *See* Cesar Decl. ¶ 9. Yet any such argument ignores the basic fact that Nike unequivocally stated that it was matching the terms of the New Balance Offer. The New Balance Offer, which consisted of only a seven-item term sheet, was entirely silent on reductions (which are standard in track and field endorsement contracts). *Id.* ¶ 8; *id.* Ex. 3 at pp. 3-5. Nike was not obligated to match terms that failed to appear in the New Balance Offer presented by Berian.[4]

The *Culpepper* case cited above is instructive on this point. In that case, Daunte Culpepper, a professional football player, had agreed to endorse Nike products. After his endorsement contract expired, he sent Nike a written offer from a Nike competitor, Reebok International, pursuant to the right of first refusal provision in his initial contract. *Id.* at *6. However, Culpepper also insisted that Nike match an oral promise from Reebok that was not

---

[4] This is particularly so, given that Defendant has never provided any long-form contract from New Balance providing any indication that New Balance intended to exclude such industry-standard terms as reductions. *See* Cesar Decl. 8.

Page 10 -    PLAINTIFF NIKE USA, INC.'S MOTION FOR TEMPORARY RESTRAINING
             ORDER AND ORDER TO SHOW CAUSE WHY PRELIMINARY
             INJUNCTION SHOULD NOT ISSUE; MEMORANDUM IN SUPPORT

contained in the written offer.  *Id.*  This Court rejected Culpepper's argument, finding that any

oral assurance not specified in writing was "too vague" and "too uncertain" to be "material,

measurable, and matchable" by Nike.  *Id.* at *12; *cf. Miller v. LeSea Broad., Inc.*, 87 F.3d 224,

227 (7th Cir. 1996) (the grantor of a right of first refusal can waive the requirement that the

right-holder match every term in a third-party offer if the grantor does not include that term in

the offer as transmitted).

The same is true in the present case.  Nike unequivocally agreed to match each of the

seven written terms of the New Balance Offer.  *See* Cesar Decl. Ex. 4.  It was not obligated to

match a purported intentional omission of reductions, akin to a purported "oral offer," and it was

permitted to include reductions in the long-form contract since such terms were "no less

favorable to [Defendant] than the material, measureable, and matchable terms" of the New

Balance Offer.

Defendant may also argue that he reserved the right to present a "revised offer" to Nike

after sending the original New Balance term sheet.  *See id.* Ex. 5.  But Nike was not obligated to

entertain any such "revised offer" once it agreed to match the terms of the New Balance Offer.

On the contrary, courts have consistently held that once an obligor under a right of first refusal

has communicated the terms of a third-party offer to the holder, he cannot amend those terms

after the right-holder has accepted on those terms. *See Cameron v. Double A. Servs., Inc.*, 595

A.2d 259, 261-62 (Vt. 1991)  (after matching terms of outside offer, right-holders were not

obliged to accede to new terms); *Bullock v. Cutting*, 155 A.D. 825, 829 (N.Y. App. Div. 1913)

Page 11  -    PLAINTIFF NIKE USA, INC.'S MOTION FOR TEMPORARY RESTRAINING
              ORDER AND ORDER TO SHOW CAUSE WHY PRELIMINARY
              INJUNCTION SHOULD NOT ISSUE; MEMORANDUM IN SUPPORT

(after lessors holding right of first refusal on property matched third-party offer, property owner could not compel them to match a higher, subsequently received offer).[5]

In sum, once Nike matched the written terms of the January 20, 2016 New Balance Offer – and there can be no doubt that Nike did so – Defendant was contractually obligated to Nike on those terms. Even Defendant himself appears to recognize this fact since he has not publicly entered into an endorsement agreement with New Balance even though he is running in New Balance footwear and apparel. *See* Cesar Decl. ¶¶ 12-13. If Nike had actually failed to match the terms of the New Balance Offer, Defendant would have been entirely free to enter into a new endorsement agreement with New Balance. The fact that he has not done so makes clear that even he believes that Nike matched the New Balance Offer, thereby creating a new agreement on the terms of that offer.

> **b.      At a Minimum, Nike's Exercise of Its Right of First Refusal Bars Defendant from Endorsing the Products of Nike's Competitors.**

Defendant may also argue that Nike's exercise of its right of first refusal standing alone should not be deemed to create a new contract unless and until the parties execute a more formal agreement. But even assuming that was true (which Nike disputes), it is not sufficient to allow Defendant to simply ignore his obligations to Nike by running in a competitor's footwear and apparel. At the very minimum, once Nike matched the material, measurable, and matchable terms of the New Balance Offer, an obligation arose for Defendant to enter into a contract with Nike on terms no less favorable than the terms contained in the New Balance Offer. That

---

[5] Along the same lines, courts have routinely rejected the argument that the grantor of a right of first refusal can withdraw from a contract after the right-holder has matched the terms of a third-party offer. *See Old Quarry Assoc. v. Hickey,* 659 F. Supp. 1064, 1069-70 (D. Conn. 1986) (landowner cannot revoke offer to sell after acceptance by holder of right of first refusal); *Gilmore v. Letcher,* 508 S.W.2d 257, 261-62 (Mo. Ct. App. 1974) (same); *Henderson v. Nitschke,* 470 S.W.2d 410, 414 (Tex. Ct. App. 1971) (same); *New Haven Trap Rock Co. v. Tata,* 177 A.2d 798, 800 (Conn. 1962) (same).

Page 12  -    PLAINTIFF NIKE USA, INC.'S MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE; MEMORANDUM IN SUPPORT

86692144.4 0063718-00220

obligation alone precludes him from entering into an agreement with one of Nike's competitors granting it the very same rights he is already contractually obligated to grant to Nike. At a minimum, therefore, Defendant is barred from entering an endorsement contract with one of Nike's competitors or from endorsing the products of a Nike competitor.

### 3.    Absent a TRO, Nike Will Suffer Irreparable Harm.

Absent injunctive relief, Defendant's repudiation of his contractual obligations will necessarily cause irreparable harm to Nike. The Olympics and Olympic Trials are only held once every four years, creating a unique marketing and promotional opportunity for Nike *this year*, the value of which is unquantifiable and irreplaceable if Defendant competes in a competitor's product. *See* Cesar Decl. ¶ 14.

Nike's ability to capitalize on this unique opportunity will be lost forever if Defendant endorses a competitor. Indeed, in *Culpepper*, this Court found that Nike's loss of an athlete endorser to a competitor was likely to cause irreparable harm. *Culpepper*, 2002 U.S. Dist. LEXIS 28777, at *12. That finding was in the context of a professional football player playing the sport 16 games every year, as contrasted to a single race run at two major events – the Olympic Trials and the Olympics.

More generally, the Ninth Circuit has presumed that the harm resulting from another's use of exclusive marketing rights is irreparable. Indeed, in the related areas of trademark, unfair competition, and copyright infringement, irreparable harm is simply presumed to exist. *See, e.g., Vision Sports, Inc. v. Melville Corp.,* 888 F.2d 609, 612 n.3 (9th Cir. 1989) (trademark infringement); *Triad Sys. Corp. v. Se. Express Co.,* 64 F.3d 1330, 1335 (9th Cir. 1995) (copyright infringement), *cert. denied,* 516 U.S. 1145 (1996). And courts have repeatedly recognized that preliminary injunctive relief is appropriate to prevent the unauthorized use of a

Page 13  -   PLAINTIFF NIKE USA, INC.'S MOTION FOR TEMPORARY RESTRAINING
             ORDER AND ORDER TO SHOW CAUSE WHY PRELIMINARY
             INJUNCTION SHOULD NOT ISSUE; MEMORANDUM IN SUPPORT

name or likeness, or the infringement of publicity rights, including those of professional athletes.
*See, e.g., Winterland Concessions Co. v. Sileo,* 528 F. Supp. 1201 (N.D. Ill. 1981) (granting a preliminary injunction to exclusive licensees of the name "Rolling Stones" enjoining other T-shirt manufacturers from manufacturing or selling T-shirts bearing the words "Rolling Stones"), *modified on other grounds,* 735 F.2d 257 (7th Cir. 1984), *and aff'd,* 830 F.2d 195 (7th Cir. 1987); *Hillerich,* 943 F. Supp. at 1141 (presuming irreparable harm to exclusive licensee of professional hockey player's name and likeness based on competitors' use of name).

Only temporary and preliminary injunctive relieve can protect Nike from harm here. Moreover, the granting of this relief will preserve the status quo and is the most efficient path. In order to do so, it is critical that the Court grant relief *before* Defendant signs with New Balance or another Nike competitor and prior to the Olympic Trials and Olympics. This will help avoid litigation in multiple courts with the accompanying inefficiencies and risks of inconsistent rulings. The Court should grant injunctive relief now to avoid that result.

**4.      The Balance of Equities Tips Sharply in Nike's Favor.**

In sharp contrast to the irreparable harm Nike will suffer absent an injunction, Defendant will not suffer any irreparable harm if the injunction is issued. Like Culpepper, Defendant "has had no difficultly in wearing and endorsing Nike's products consistently throughout the [initial phase] of his career." *Culpepper*, 2002 U.S. Dist. LEXIS 28777, at *14. Thus, restraining Defendant from endorsing New Balance (or any other competitor) "should impose no great hardship." *Id.* The balance of hardships therefore weighs heavily in favor of enjoining Defendant from endorsing Nike's competitor's products.

**5.      The Public Interest Is a Neutral Factor in This Case.**

Courts have held that the public interest is a non-factor in granting preliminary injunctive

Page 14  -  PLAINTIFF NIKE USA, INC.'S MOTION FOR TEMPORARY RESTRAINING
ORDER AND ORDER TO SHOW CAUSE WHY PRELIMINARY
INJUNCTION SHOULD NOT ISSUE; MEMORANDUM IN SUPPORT

86692144.4 0063718-00220

relief in similar cases involving private contract disputes. Where, as here, an injunction is "limited only to the parties, and has no impact on non-parties, public interest will be at most a neutral factor in the analysis rather than one that favors granting or denying the preliminary injunction." *Stromans, Inc. v. Selecky*, 586 F.3d 1109, 1139 (9th Cir. 2009); *see also Marquez Bros. Int'l, Inc. v. Atletico Morelia S.A. De C.V.*, No. 5:05-CV-1889, 2005 WL 1869501, at *8 (N.D. Cal. Aug. 5, 2005) (concluding that a sponsorship dispute "is not a public interest case"). Therefore, the public interest is not an issue in this case.

## IV.  CONCLUSION

For the forgoing reasons, Nike respectfully requests that this Court enter an order temporarily enjoining Defendant from breaching his exclusive endorsement agreement with Nike and ordering Defendant to show cause why a preliminary injunction should not be entered.

DATED:  June 1, 2016.

STOEL RIVES LLP


*/s/ Per A. Ramfjord*
PER A. RAMFJORD, OSB No. 934024
per.ramfjord@stoel.com
KENNON SCOTT, OSB No. 144280
kennon.scott@stoel.com

Attorneys for Plaintiff Nike, Inc.

86692144.4 0063718-00220

## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing on the following named persons on the date indicated below by

☒  mailing with postage prepaid

☐  hand delivery

☐  facsimile transmission

☐  overnight delivery

☒  email

☐  notice of electronic filing using the CM/ECF system

to said persons a true copy thereof, contained in a sealed envelope, addressed to said persons at his or her last-known addresses indicated below.

Mr. Vincent C. Ewing
Alvarez-Glasman & Colvin
Suite 400 - West Tower
13181 Crossroads Parkway North
City of Industry, CA  91746
Email:  VEwing@agclawfirm.com

DATED:  June 1, 2016.

STOEL RIVES LLP

/s/ Per A. Ramfjord
PER A. RAMFJORD, OSB No. 934024
per.ramfjord@stoel.com
KENNON SCOTT, OSB No. 144280
kennon.scott@stoel.com

Page 1    -    CERTIFICATE OF SERVICE